HAEGGQUIST & ECK, LLP
ALREEN HAEGGQUIST (221858)
  alreenh@haelaw.com
AARON OLSEN (259923)
  aarono@haelaw.com
ANNA C. SCHWARTZ (346268)
  annas@haelaw.com
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878

Attorneys for Plaintiff Nicholas Hazleton

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS HAZLETON, an Individual,<br><br>        Plaintiff,<br><br>    v.<br><br>VALNET INC., a Canadian Corporation; VALNET USA INC., a Delaware Corporation,<br><br>        Defendants. | Case No.: **'24CV2298 RBM AHG**<br><br>COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES<br><br><br><br>DEMAND FOR JURY TRIAL |

HAEGGQUIST & ECK, LLP

Plaintiff Nicholas Hazleton ("Mr. Hazleton" or "Plaintiff"), by his attorneys, brings this action on behalf of himself against Defendants Valnet Inc. and Valnet USA Inc. ("Valnet" or "Defendants"). Mr. Hazleton makes the following allegations upon information and belief (except those allegations as to Mr. Hazleton or his attorneys which are based on personal knowledge), based upon an investigation that is reasonable under the circumstances, which allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

## NATURE OF THE ACTION

*Independent Contractor Misclassification Imposes Huge Costs on Workers and Federal and State Treasuries*

*~ National Employment Law Project, Oct. 26, 2020*

1.     That is the headline of a policy and data brief published by the National Employment Law Project.[1] Classifying employees as "'independent contractors' deprives them of core rights and protections, such as minimum wage, overtime pay, contributions to Social Security, the right to collective bargaining . . . , workers' compensation, unemployment compensation, and protection from discrimination." *Id.* Employers such as Valnet, who intentionally misclassify its employees as independent contractors, not only deny workers the protection of workplace laws, but rob unemployment and workers' compensation funds of billions of much-needed dollars, and reduce federal, state and local tax withholding revenues, while saving as much as 30 percent of payroll and related taxes otherwise paid for employees. *Id.* Even the office of the United States Federal Trade Commission has recognized how

[1]     *See*      https://www.nelp.org/insights-research/independent-contractor-misclassification-imposes-huge-costs-workers-federal-state-treasuries-update-october-2020/ (last visited 12/5/2024).

COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES

HAEGGQUIST & ECK, LLP

misclassification "takes **billions** from working people and gives it to lawbreakers. It is a pervasive and national scandal."[2]

2.    Unfortunately, Valnet is a core contributor to this pervasive and national scandal. Valnet's global business focuses on digitally publishing articles, videos, and other content related to consumer products, entertainment, automotive, and other interests. Its writers, editors, and content creators ("Content Creators"), such as Mr. Hazleton, are core and indispensable to Valnet's business. Unfortunately, Valnet intentionally misclassifies its Content Creators as independent contractors to avoid its duties owed to employees under California law, to cheat the government out of substantial tax revenue, and to gain an unfair advantage over competitors who comply with the law. Valnet's control over Content Creators goes so far that it even requires its Content Creators to enter unlawful non-compete agreements in violation of California law. Even worse, after Mr. Hazleton reported Valnet's unlawful misclassification of workers and refused to participate in its unlawful conduct, Valnet unlawfully discharged Mr. Hazleton.

3.    To redress the harms suffered, Mr. Hazleton brings claims for: (1) willful misclassification in violation of California Labor Code §226.8, recoverable via the Private Attorney Generals Act of 2004 ("PAGA"); (2) failure to timely pay all wages due and owing in violation of California Labor Code §218; (3) failure to pay minimum wages in violation of California Labor Code §§1194, 1197 and Industrial Welfare Commission ("IWC") Wage Order 4-2001 ("Wage Order 4"); (4) failure to pay overtime wages in violation of California Labor Code §§510, 1194 and Wage Order

---

[2]    *See* Alvaro M. Bedoya, Comm'r, U.S. Fed. Trade Comm'n, Keynote Address at Global Competition Review: Law Leaders Global Summit, *Overawed: Worker Misclassification as a Potential Unfair Method of Competition* (Feb. 2, 2024), available at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.ftc.gov/system/files/ftc _gov/pdf/Overawed-Speech-02-02-2024.pdf (last visited 12/4/2024).

HAEGGQUIST & ECK, LLP

HAEGGQUIST & ECK, LLP

4; (5) failure to reimburse business expenses in violation of California Labor Code §2802; (6) failure to furnish and maintain accurate wage statements and employment records in violation of Labor Code California §§226, 423, 1198.5, and Wage Order 4; (7) failure to provide meal periods in violation of California Labor Code §226.7 and Wage Order 4; (8) failure to provide rest periods in violation of California Labor Code §226.7 and Wage Order 4; (9) failure to pay all wages due and owing at time of discharge in violation of California Labor Code §§201-203; (10) retaliation and wrongful termination in violation of California Labor Code §1102.5; (11) wrongful termination in violation of public policy; (12) violation of California Business and Professions Code §16600.5; (13) violation of the Unfair Competition Law ("UCL"), California Business and Professions Code §17200, *et seq*.; and (14) additional PAGA penalties, California Labor Code §§2698, *et seq*.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action under 28 U.S.C. §1332(a)(2) because Plaintiff is a citizen of the state of California and Defendants are citizens and subjects of a foreign country and state and the amount in controversy exceeds $75,000.00, excluding interest and costs.

5.      The Southern District of California has personal jurisdiction over the parties in this matter. Plaintiff is, and at all relevant times was, a citizen residing in San Diego County, California. Defendants either have, or currently do, business within California, and operate in California. Defendants are either licensed to do, or do, business in California, have employees who reside in California, and promote, sell, and market services to customers throughout California. Finally, the acts and omissions which are outlined in this Complaint took place within the County of San Diego, State of California.

6.      Venue is proper in this District under 28 U.S.C. §1391 because Plaintiff and Defendants are, and at all relevant times have been, subject to the personal

jurisdiction of this Court, and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## THE PARTIES

### Plaintiff

7.      Plaintiff Nicholas Hazleton is a natural person, over 18 years old, residing in the County of San Diego, State of California. While Valnet intentionally misclassified him as an independent contractor, Mr. Hazleton was an employee of Valnet from in or about January 2022, until his termination on or about April 19, 2024. Mr. Hazleton is, and at all relevant times was, a member of a protected class of persons within the meaning of California Labor Code §1102.5.

### Defendants

8.      Defendant Valnet Inc. is a Canadian corporation based in Montreal, Quebec. Valnet Inc., jointly with Valnet USA Inc., operated at all relevant times in the State of California as a foreign corporation.

9.      Defendant Valnet USA Inc. is a Delaware corporation based in Miami, Florida. Valnet USA Inc., jointly with Valnet Inc., operated at all relevant times in the State of California as a foreign corporation.

10.      Persons on behalf of Valnet Inc., and persons on behalf of Valnet USA Inc., acted on behalf of one another to engage in activity that violated, *inter alia*, Labor Code §1102.5. Valnet Inc. and Valnet USA Inc. were also joint employers of Mr. Hazleton. Together, the entities constitute a single employer under the integrated enterprise test given their interrelation of operations, common management, centralized control of labor relations, and common ownership and control. Collectively, the entities are referred to as "Valnet."

11.      In doing the acts alleged herein, Valnet's employees, subcontractors, and agents acted within the course and scope of their employment and agency with Defendants. Defendants engaged in the acts alleged herein and/or condoned,

permitted, authorized, and/or ratified the conduct of their employees, subcontractors, and agents, and are vicariously liable for the wrongful conduct of their employees, subcontractors, and agents alleged herein.

## FACTS COMMON TO ALL COUNTS

### About Valnet

12.     Valnet touts that it is a "global digital publishing and media investment Company that owns and operates over 25 authoritative brands across diverse verticals, including entertainment, sports, technology, automotive, gaming, lifestyle and travel."[3] With respect to the automotive vertical, Valnet owns and operates the HotCars, TopSpeed, and CarBuzz brands. Valnet's brands are largely operated digitally through websites and online video channels dedicated to publishing articles, videos, and other media related to their brands. The more traffic the websites and channels attract, the more advertising revenue Valnet generates. As such, Valnet's Content Creators are core and indispensable positions to its business.

13.     Notwithstanding, Valnet required its Content Creators, such as Mr. Hazleton, to enter "Master Services Agreements" wherein Valnet purports to classify them as "independent contractors" and not as employees within the meaning of, *inter alia*, all federal, state, and local laws and regulations governing wages, work hours, benefits, employment insurance, workers' compensation, industrial accident, labor, and taxes of the United States. *See, e.g.*, **Exhibit 1** (Master Services Agreement, December 8, 2022) ("Agreement"). As discussed below, not only do the Agreements unlawfully purport to classify Valnet's workers as independent contractors, but they also contain unlawful restrictive covenant provisions.

---

[3]     *See* Valnet's website homepage https://www.valnetinc.com/en/ (last visited 12/05/2024).

HAEGGQUIST & ECK, LLP

**Plaintiff's Employment**

14.     Mr. Hazleton was hired by Valnet in January 2022 to initially work as a writer in its automotive vertical, predominately working with Valnet's HotCars brand. Mr. Hazleton was soon transitioned into an editorial position as a Weekday News Editor in exchange for an annual salary of $24,000, plus biyearly bonus eligibility. With Mr. Hazleton already working more than 40 hours per week, around December 2022, Valnet promoted Mr. Hazleton to a full-time position of Senior News Editor, with a promised annual salary of $40,000 plus biyearly bonus eligibility. While Valnet transitioned Mr. Hazleton to the position of a Junior Editor in July 2023 for a couple of weeks, in August 2023, Valnet promoted Mr. Hazleton to the position of Senior News Editor and Features Editor, with an annual salary of $48,000, plus biyearly bonus eligibility. Mr. Hazleton remained in this position until Valnet unlawfully discharged him on or about April 19, 2024.

**Valnet Unlawfully Classifies Its Employees as Independent Contractors**

15.     Valnet intentionally misclassified Mr. Hazleton and its Content Creators as independent contractors to avoid paying eligible benefits, statutorily mandated wages, and taxes, which not only harmed its workers, but allowed Valnet to cheat the government out of substantial tax revenue and gain an unfair advantage over competitors who comply with the law.

16.     Whether evaluated under (1) the employment status test set forth in Assembly Bill 5, Labor Code §2774, *et seq*., which codified the "ABC Test" adopted by the California Supreme Court in *Dynamex Operations W., Inc. v. Superior Ct.*, 4 Cal. 5th 903 (2018), (ii) the "Borello Test" adopted by the California Supreme Court in *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341 (1989), (iii) the economic reality test under the Fair Labor Standards Act, 29 C.F.R. §795.110, (iv) the Internal Revenue Service ("IRS") 20-factor test for tax purposes, Rev. Rul. 87-41 (1987), and/or (v) the California Unemployment Insurance Code §621, Mr. Hazleton

HAEGGQUIST & ECK, LLP

and other similarly situated workers were undisputedly employees, not independent contractors.

17.     First, as an editor, Mr. Hazleton performed duties that were a regular and indispensably integral part of Valnet's business. From the inception of his employment, Valnet provided Mr. Hazleton with a "HotCars" email address, "Nicholas.h@hotcars.com, which it required Mr. Hazleton to use for all work-related purposes. He was further given and required to use an email signature line identifying him as a Valnet HotCars employee:



Nick Hazleton | Lead Short-Term Content Editor

Website: www.hotcars.com
Email: nicholas.h@hotcars.com
Author Profile: nicholas-hazleton

18.     Valnet even published Mr. Hazleton's profile on its website recognizing him as their HotCars Lead News Editor.[4]



7
COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES

HAEGGQUIST & ECK, LLP

19.    Valnet further exercised substantial, if not total, control over the manner and means by which Mr. Hazleton and Content Creators performed their work, as evidenced under the Agreement and in fact:

(a)    Content Creators are prohibited from subcontracting their work to other workers. Ex. 1, Agreement, ¶4.3. As such, Mr. Hazleton was required to perform the work himself, not as an independent business.

(b)    Content Creators' work is subject to Valnet's complete discretion as to approval or revision of the work product. Ex. 1, Agreement, ¶4.7.

(c)    Content Creators are prohibited during their work relationship with Valnet and for six months after discharge from soliciting Valnet's customers, employees, and contributors. Ex. 1, Agreement, ¶4.10. Not only is this undisputable evidence that Valnet exercised control akin to an employer-employee relationship, but this provision violates California's non-compete laws (see discussion below).

(d)    Content Creators are required to assign all their content and intellectual property rights to Valnet for work performed while working for Valnet. Ex. 1, Agreement, ¶¶6.1-6.5.

(e)    The nature of Mr. Hazleton's work was not contract or task based but was a full-time employment position in which Valnet retained the right to discharge Mr. Hazleton at will.

(f)    Valnet paid Mr. Hazleton a "monthly salary" like an employee, and he was expected to work full-time hours from Monday through Friday.

(g)    Valnet provided Mr. Hazleton with a bi-annual performance evaluation.

(h)    Mr. Hazleton did not have independent discretion or right to hire or fire workers to perform work for Valnet.

(i)    Mr. Hazleton had no opportunity to realize profit or business loss from Valnet's operations.

8
COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES

HAEGGQUIST & ECK, LLP

(j)  Mr. Hazleton's work was done under the direction and supervision of Valnet's management.

(k)  Valnet retained the right to, and did, require Mr. Hazleton's compliance with its instructions.

(l)  Valnet exercised control over the hours of Mr. Hazleton's work, including requiring Mr. Hazleton to be available during "office hours," post articles at specific times of the day, and attend mandatory meetings.

(m)  Valnet exercised control over the nature of Mr. Hazleton's work, including mandating he follow Valnet's policies, procedures, and training regarding how, when and where Mr. Hazleton did his work, including the topics and headlines, and using Valnet's "Editor's Checklist," which controlled the word count, basic image requirements, subheader requirements, article structure requirements, formatting requirements, basic linking requirements, tag requirements, category and written content requirements, search engine optimization requirements, and scheduling and calendaring requirements, among others.

(n)  Mr. Hazleton was required to present himself as a Valnet representative for its brands such as HotCars in an official capacity on social media, at events, and with industry contacts.

(o)  Mr. Hazleton was required to train and supervise new Valnet writers and editors, manage teams, and retrain workers.

(p)  Mr. Hazleton was required to "offboard poorly performing writers" at Valnet's direction.

(q)  Mr. Hazleton was required to hold "virtual office hours" with other Valnet workers.

20.  This is an illustrative, not exhaustive, list of the ways Valnet retained total control over the manner and means of Mr. Hazleton's and other Content Creators' work, undisputedly demonstrating Valnet intentionally misclassified Mr. Hazleton as an independent contractor.

**The Harm Caused by Valnet's Unlawful Business Model Is Substantial**

21.    Valnet's unlawful misclassification of its workers not only results in the theft of wages and benefits from its workers, but the company is stealing from the United States Treasury and gaining an unfair advantage over honest competitors.

22.    First, because of Valnet's intentional misclassification of Mr. Hazleton as an independent contractor, Valnet failed to provide Mr. Hazleton with the protections of being an employee, including, without limitation, workers' compensation benefits, disability insurance, vacation or sick pay, minimum wages, social security contributions, overtime wages, reimbursement of business expenses, accurate wage statements, and other benefits available to Valnet's employees.

23.    As an editor, Mr. Hazleton's occupation is classified under Wage Order 4, 8 Cal. Code Regs. §11040. At no time during his employment with Valnet, was Mr. Hazleton exempt from California's wage and hour laws (e.g., minimum wage and overtime) because, *inter alia*, Mr. Hazleton's monthly salary was less than two times the state minimum wage for full-time employment, his work involved routine mental and manual work, and he did not have the authority to customarily and regularly exercise discretion and independent judgment in the performance of his duties.

24.    **Minimum wage violations**. Valnet violated California's minimum wage law because it must pay employees at least the state's minimum wage "for all hours worked." *Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762, 782 (2020); *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 324 (2005) (averaging hourly compensation is not permitted under California law). Valnet failed to pay Mr. Hazleton and other Content Creators for "all hours worked." In evaluating Mr. Hazleton's damages, his employment can be broken into four periods:

(a)    *Period One*: From about January 2022 (hiring) to April 24, 2022 ("Period One"), Valnet solely compensated Mr. Hazleton on a piece-rate basis for each published article. During this period, the minimum wage in California was $15.00 per

HAEGGQUIST & ECK, LLP

hour. *See* Cal. Lab. Code §1182.12(b)(1)(F). Valnet failed to pay Mr. Hazleton at least minimum wage for all hours worked during Period One.

(b)    *Period Two*: From about April 25, 2022 to about December 14, 2022 ("Period Two"), Valnet agreed to compensate Mr. Hazleton with an annual salary of $24,000 for 20 hours of work per week, plus a small piece-rate for some publications. With a 20-hour workweek, equating to about 1,040 working hours in a year, Mr. Hazleton's hourly rate during Period Two was about $23.08. However, Mr. Hazleton was required to work more than 20 hours in many weeks, resulting in Valnet failing to pay Mr. Hazleton for all hours worked in Period Two.

(c)    *Period Three*: From about December 15, 2022 to August 15, 2023 ("Period Three"), Valnet agreed to compensate Mr. Hazleton with an annual salary of $40,000 for 40 hours of work per week. With a 40-hour workweek, equating to about 2,080 working hours in a year, Mr. Hazleton's hourly rate during Period Three was about $19.23. However, Mr. Hazleton was required to work more than 40 hours in many weeks, resulting in Valnet failing to pay Mr. Hazleton for all hours worked in Period Three.

(d)    *Period Four*: From about August 16, 2023 to the termination of Mr. Hazleton's employment ("Period Four"), Valnet agreed to compensate Mr. Hazleton with an annual salary of $48,000 for 40 hours of work per week. With a 40-hour workweek, equating to about 2,080 working hours in a year, Mr. Hazleton's hourly rate during Period Four was about $23.08. However, Mr. Hazleton was required to work more than 40 hours in many weeks, resulting in Valnet failing to pay Mr. Hazleton for all hours worked in Period Four.

25.    Mr. Hazleton's respective annual salary amounts throughout Period Two through Period Four were not reduced or increased depending on the hours he actually worked. Because Valnet failed to pay Mr. Hazleton for all hours worked in Period One through Period Four, Valnet violated California's minimum wage law. It makes no difference that the aggregate compensation Valnet paid to Mr. Hazleton for each bi-

monthly pay period, when divided by the total number of hours during that period, yields an hourly rate that exceeds the minimum wage. *Oman*, 9 Cal. 5th at 781-82; *Armenta*, 135 Cal. App. 4th at 323-24.

26.    **Overtime violations**. Mr. Hazleton was required to work at times over eight hours per day, forty hours per week, and/or work on a seventh consecutive day in a workweek. However, Valnet did not pay Mr. Hazleton overtime wages for those hours worked. Based on information and belief, Valnet does not pay any of the Content Creators it misclassified as independent contractors overtime wages for time they work beyond eight hours per day, forty hours per week, and/or for work on a seventh consecutive day in a workweek.

27.    **Failure to Reimburse Business Expenses**. Valnet required Mr. Hazleton and other Content Creators to use their own computers, smart phones, internet, and other tools and materials necessary to perform their jobs. Despite knowing these expenses were being incurred, Valnet failed to reimburse Mr. Hazleton and the Content Creators for such expenses.

28.    **Failure to Provide Meal and Rest Periods**. Mr. Hazleton regularly and consistently worked more than five hours per day. Valnet, however, did not provide Mr. Hazleton with a timely 30-minute off-duty meal period within the first five hours of his workday or otherwise. Nor did Valnet provide Mr. Hazleton with an uninterrupted ten-minute rest period for every four hours or major fraction thereof worked. Based on information and belief, Valnet failed to provide such meal and rest periods to the other Content Creators.

29.    **Paid Sick Time Violations**. Up until January 1, 2024, pursuant to the California Healthy Workplaces, Healthy Families Act of 2014, California employers were required to provide employees with at least 24 hours or three days of paid sick leave per year. Mr. Hazleton was eligible for paid sick leave because he worked in California for at least 30 days within a year of being hired. As of January 1, 2024, Mr.

HAEGGQUIST & ECK, LLP

Hazleton was entitled to paid sick leave of up to five days or 40 hours. Valnet failed to provide Mr. Hazleton and other Content Creators with any paid sick leave.

30. **Wage Statement Violations and Failure to Maintain Employment Records**. Through Mr. Hazleton's employment, Valnet failed to provide him with wage statements compliant with Labor Code §226 because it failed to provide him with statements that itemized, *inter alia*, total hours worked, number of piece-rate units earned and applicable piece rate, all deductions, gross versus net wages earned, last four digits of social security number or employee identification number, and all applicable hourly rates in effect and corresponding number of hours at each hourly rate. Based on information and belief, Valnet similarly failed to provide other Content Creators with accurate wage statements. Valnet also failed to make available to Mr. Hazleton and other Content Creators access to wage statements, personnel files, and other employment records, to review and/or copy. Based on information and belief, Valnet failed to maintain such records.

31. **Tax Theft**. Employers such as Valnet have a legal responsibility to collect and pay over to the IRS taxes withheld from their employees' wages. 26 U.S.C. §§3102(a), 3102(b), 3402, 3403. One of the four types of tax imposed by the Internal Revenue Code with respect to wages paid to employees is income tax, which is based on the amount of wages they receive. 26 U.S.C. §§1, 61(a)(1). As stated by the U.S. Department of Justice ("DOJ"), when "employers willfully fail to collect, account for and deposit with the IRS employment tax due, ***they are stealing from their employees and ultimately, the United States Treasury***."[5] "In addition, employers who willfully fail to comply with their obligations and unlawfully line their own pockets with amounts withheld are gaining an unfair advantage over the honest competitors." *Id.*

---

[5] DOJ Tax Division, https://www.justice.gov/tax/employment-tax-enforcement-0 (last visited 12/05/2024 (emphasis added).

COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES

HAEGGQUIST & ECK, LLP

In an April 2016 press release, the DOJ stressed that the failure to comply with federal employment tax obligations is "not simply a civil matter."[6] Where employment taxes are not paid, the DOJ can, and does, pursue criminal prosecution.

> Any person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax shall, in addition to other penalties provided by law, be guilty of a felony, and upon conviction thereof, shall be fined … or imprisoned not more than 5 years, or both, together with the costs of prosecution.

26 U.S.C. §7202.

32.    Employment tax crimes are regularly prosecuted under §7202, as well as 26 U.S.C. §7201 (tax evasion), 26 U.S.C §7206(1) (false returns), 26 U.S.C. §7212(a) (obstruction), and 18 U.S.C. §371 (conspiracy to defraud); *see, e.g.*, *United States v. Kahre*, 737 F.3d 554, 580-81 (9th Cir. 2013) (finding workers were employees and not independent contractors in sustaining §7202 convictions). Here, due to intentionally misclassifying Mr. Hazleton and other Content Creators, Valnet willfully failed to collect, account for and deposit with the IRS employment tax due, and thereby the company was stealing from its employees and ultimately, the United States Treasury.

**Valnet Unlawfully Discharged Plaintiff for Reporting Conduct that Violated the Law and for Refusing to Participate in the Same**

33.    Valnet discharged Mr. Hazleton because he reported that Valnet was violating the law and because he refused to work under conditions that violated the law.

34.    Specifically, in April 2024, Mr. Hazleton notified management that he was being paid on the low end for editors in the automotive publication industry. While Valnet initially offered to cover his insurance benefits, the company then went

---

[6]    DOJ Press Release "Justice Department Reminds Employers of Their Employment Tax Responsibilities" (Apr. 27, 2016), available at www.justice.gov.

COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES

HAEGGQUIST & ECK, LLP

silent in communicating with Mr. Hazleton about his wages and benefits. In response, Mr. Hazleton researched federal and California labor laws and determined the company had been violating the law by misclassifying him and others as independent contractors.

35.    Thus, on or about April 16, 2024, Mr. Hazleton reported the unlawful conduct to his supervisors, including by directing the company to publications by the U.S. Department of Labor and the California Department of Industrial Relations regarding misclassification of workers. Mr. Hazleton also reported that he was not going to complete any more work until the unlawful conditions were rectified. In other words, Mr. Hazleton reported he did not want to participate in working under conditions that violated the law.

36.    In response, Valnet refused to cease its unlawful misclassification of Mr. Hazleton (and other similarly situated workers) and instead terminated Mr. Hazleton's employment on April 19, 2024, because Mr. Hazleton reported unlawful conduct and because he refused to participate in activity that would result in a violation of state and federal laws. Indeed, Valnet knew its conduct was unlawful. Just a few months prior, Valnet was hit with a wage and hour class action lawsuit because of Valnet's misclassification of its Content Creators as independent contractors. *See Quintiliano v. Valnet, Inc., et al.*, Case No. 23STCP04605 (L.A. Super. Ct. Dec. 21, 2023).

**Valnet Unlawful Restricts Its Workers with Invalid Noncompete Agreements**

37.    If intentionally misclassifying its employees as independent contractors was not bad enough, through its Agreement, Valnet unlawfully attempts to restricts its workers from competing in the industry in violation of, *inter alia,* California Business and Professions Code §§16600. This in turn triggers liability under California Labor Code §432.5, which prohibits employers from requiring employees to agree to any term or condition of employment that is known by the employer to be prohibited by law, and anyone who violates that section is guilty of a misdemeanor under Labor Code §433. Here, Valnet knowingly violated, *inter alia*, Business & Professions Code

HAEGGQUIST & ECK, LLP

§16600, *et seq.*, by requiring Mr. Hazleton and other Content Creators to agree to terms and conditions of employment prohibited by law, namely, unlawful restrictive covenant provisions in the Agreement. *See* Ex. 1, Agreement, ¶¶4.10.1-4.11.

38.    As a direct result of Valnet's conduct, Mr. Hazleton has suffered, and continues to suffer, lost wages, humiliation, embarrassment, emotional distress, and mental anguish. Mr. Hazleton is a victim of Defendants' unlawful practices and therefore brings this action to recover damages, restitution, penalties, and injunctive relief.

## PRIVATE ATTORNEYS GENERAL ACT

39.    California's PAGA (Labor Code §2698, *et seq.*) was in effect during all relevant times during Mr. Hazleton's employment with Valnet. PAGA provides that any civil penalty which may be assessed and collected by the Labor and Workforce Development Agency ("LWDA") for violations of the Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself and other current or former employees pursuant to procedures outlined in Labor Code §2699.3.

40.    Under PAGA, an "aggrieved employee," is "any person employed by the alleged violator against whom one or more of the alleged violations was committed." Lab. Code §2699(c)(1). Mr. Hazleton was employed by Valnet and the alleged violations were committed against him during his employment and he is, therefore, an aggrieved employee as defined by Labor Code §2699(c)(1). The alleged violations were also committed against other Content Creators.

41.    Under Labor Code §§2699.3 and 2699.5, an aggrieved employee, including Mr. Hazleton, may pursue a civil action to recover PAGA civil penalties in addition to any other available penalties after: (1) giving written notice by certified mail ("Employee's Notice") to the LWDA and the employer of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations; and (2) the LWDA advises the employee

16

and employer it declines to investigate the alleged violations within 60 calendar days of the postmark date of the Employee's Notice. Lab. Code §2699.3(a)(1)-(2).

42.    On August 9, 2024, Mr. Hazleton provided written notice by online submission and by certified mail to the LWDA and by certified mail to Valnet of the specific provisions of the Labor Code alleged to have been violated, including the facts and theories to support the alleged violations, under Labor Code §2699.3.

43.    The employer may cure the alleged violation within 33 calendar days of the Employee's Notice. Lab. Code §2699.3(c)(2)(A). To date, Valnet has not cured the violations.

<u>**COUNT I**</u>

**Willful Misclassification**
**In Violation of California Labor Code §226.8**
**Recoverable via PAGA**

**(Against All Defendants)**

44.    Plaintiff realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

45.    Labor Code §226.8(a)(1) makes it unlawful for any person or employer to engage in the willful "misclassification of an individual as an independent contractor."

46.    For a violation of Labor Code §226.8(a), the employer shall be subject to a civil penalty of not less than $5,000 and not more than $15,000 for each violation, in addition to any other penalties or fines permitted by law. Lab. Code §226.8(b). If the employer is found to have engaged in a pattern or practice of these violations, the employer shall be subject to a civil penalty of not less than $10,000 and not more than $25,000 for each violation, in addition to any other penalties for fines permitted by law. Lab. Code §226.8(c).

47.    In addition to any other remedy that has been ordered for a violation of Labor Code §226.8(a), the court shall order the employer to publicly display notice of its violation in compliance with Labor Code §§226.8(e), (f) and (h).

HAEGGQUIST & ECK, LLP

48.    Defendants willfully engaged in a pattern and practice of violating Labor Code §226.8(a). Defendants' misclassification of Plaintiff and the other Content Creators as independent contractors was willful because it was done knowingly and voluntarily. Defendants had a pattern and practice of willfully misclassifying its Content Creators as independent contractors.

49.    To the extent any civil penalty under the Labor Code is to be assessed and collected by the LWDA or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of the Labor Code, pursuant to PAGA, Labor Code §2699(a), Plaintiff seeks all such applicable civil penalties on behalf of himself and other aggrieved employees pursuant to the procedures specified in Labor Code §2699.3.

50.    Plaintiff and Content Creators are entitled to civil penalties pursuant to Labor Code §226.8(b) and (c) because of Defendants' pattern or practice of violating Labor Code §226.8(a). As a direct and proximate result of Defendants' unlawful misclassification, Plaintiff and Content Creators have been damaged in an amount to be proven at the time of trial.

51.    Plaintiff is also entitled to costs and reasonable attorneys' fees pursuant to Labor Code §§218.5, 2699(g), Code of Civil Procedure §1021.5, and any other applicable provision for attorneys' fees and costs.

## <u>COUNT II</u>

### Failure to Pay All Wages Due and Owing
### In Violation of California Labor Code §218

### (Against All Defendants)

52.    Plaintiff realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

53.    California Labor Code §218 provides for a private right of action for "any wage claimant to sue directly or through an assignee for any wages or penalty

HAEGGQUIST & ECK, LLP

due him" under the provisions of Article 1 (§§200-244) of the Labor Code. Lab. Code §218.

54.    As set forth above in this Complaint, due to Defendants' misclassification of Plaintiff as an independent contractor, Defendants failed to pay Plaintiff all wages due and owing.

55.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages in an amount to be proven at the time of trial.

56.    Plaintiff may also recover costs, reasonable attorneys' fees, and prejudgment interest under Labor Code §§218.5 and 218.6.

## COUNT III

**Failure to Pay Minimum Wage**
**In Violation of California Labor Code §§1194 and**
**1197, and Wage Order 4**

**(Against All Defendants)**

57.    Plaintiff realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

58.    Labor Code §1197 provides, "[t]he minimum wage for employees fixed by the commission . . . is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful." Lab. Code §1197. The statutory minimum wages are set forth in Labor Code §1182.12.

59.    "All wages . . . earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays." Lab. Code §204(a). "Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise." 8 Cal. Code Regs. §11040(4)(B).

HAEGGQUIST & ECK, LLP

COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES

60.     The broad definition of "hours worked" includes "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." *See* 8 Cal. Code Regs. §11040(2)(K). California workers must receive the minimum wage for ***each hour worked*** during the payroll period, even if the agreed-upon compensation exceeds the minimum wage for the total hours worked. *See Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 51-52 (2013) (emphasis added); *Armenta*, 135 Cal. App. 4th at 323; *Oman*, 9 Cal. 5th at 782.

61.     Defendants subjected Plaintiff to their control during hours for which Plaintiff was not compensated. It achieved this by, *inter alia*, failing to maintain time records so that Plaintiff was not paid any wages for certain hours. Rather, for Period One, Valnet simply paid Plaintiff a small piece rate for published articles without compensating Plaintiff for any hours worked. In Period Two through Period Four, Defendants paid Plaintiff a fixed salary that did not compensate Plaintiff for all hours worked. As a direct result, Defendants failed to pay Plaintiff the minimum wage for each hour worked during the payroll periods throughout his employment.

62.     "[A]ny employee receiving less than the legal minimum wage . . . applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage . . . , including interest thereon, reasonable attorney's fees, and costs of suit." Lab. Code §1194(a).

63.     Because Plaintiff suffered damage as a direct result of Defendants' failure to pay him for all hours worked, Plaintiff may recover the full amount of the difference between what he was paid and what he was required to be paid, including interest thereon, reasonable attorneys' fees, and costs of suit. Lab. Code §§1194(a), 1194.3, 218, 218.5, 218.6. Plaintiff may also "recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." Lab. Code §1194.2(a).

## COUNT IV

### Failure to Pay Overtime Compensation
### In Violation of California Labor Code §§510, 1194 and Wage Order 4

### (Against All Defendants)

64.    Plaintiff realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

65.    Employees must be paid one and one-half of their regular wages for every hour worked above forty hours in each work week, or above eight hours in each workday. *See* 8 Cal. Code Regs. §11040(3). "[A]ny employee receiving less than . . . the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this . . . overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Lab. Code §1194(a); *see also* Lab. Code §§218, 218.5, 218.6.

66.    Labor Code §510(a) provides:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

Lab. Code §510(a); *see also* 8 Cal. Code Regs. §11050(3)(A)(1).

67.    Plaintiff did not work alternative workweek schedules pursuant to Labor Code §§511, 514, or 554.

68.    Plaintiff worked more than eight hours in a workday and/or more than 40 hours in a workweek without being compensated at the applicable overtime rate. Plaintiff also worked on a seventh day of a workweek without being compensated at the applicable overtime rate. Defendants failed to pay Plaintiff overtime wages.

HAEGGQUIST & ECK, LLP

69.    As such, Defendants must pay Plaintiff all unpaid overtime wages, interest, costs of suit, and reasonable attorneys' fees. Lab. Code §§218, 218.5, 218.6, 1194(a).

## COUNT V

### Failure to Reimburse Reasonable Business Expenses
### In Violation of California Labor Code §2802

### (Against All Defendants)

70.    Plaintiff realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

71.    "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." Lab. Code §2802(a). The purpose of the statute is "'to prevent employers from passing their operating expenses on to their employees.'" *Cochran v. Schwan's Home Serv., Inc.*, 228 Cal. App. 4th 1137, 1144 (2014) (citations omitted); *id.* at 1145 (holding, to "show liability under section 2802, an employee need only show that he or she was required" to incur a business-related expense and "not reimbursed").

72.    "Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void, and this article shall not deprive any employee . . . of any right or remedy to which he is entitled under the laws of this State." Lab. Code §2804; *see also Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 951 (2008) (holding Labor Code §2804 applies to Labor Code §2802, "making all contracts that waive an employee's right to indemnification null and void"); *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1123 (S.D. Cal. 2006) (holding Labor Code §2804 precluded employer from arguing the

HAEGGQUIST & ECK, LLP

deductions it made in violation of Labor Code §2802 were "contractually agreed upon with the Plaintiff").

73.    As set forth above, Plaintiff was an employee of Valnet from approximately January 2022 through his unlawful discharge on or about April 19, 2024. Defendants, however, willfully misclassified Plaintiff as an independent contractor.

74.    Plaintiff incurred necessary expenditures in direct consequence of the discharge of his employment duties and his obedience to Defendants' directions including, but not limited to, the purchase, service, and usage of Plaintiff's personal cell phone, service and usage of Plaintiff's internet, and purchase and usage of home office equipment such as laptop, desktop, monitors, and desk.

75.    As a result of the Defendants' unlawful acts, Plaintiff is entitled to recover his unreimbursed expenditures, interest, and attorneys' fees and costs, in amounts to be proven at the time of trial. Lab. Code §2802(b), (c).

## **<u>COUNT VI</u>**

### **Failure to Furnish and Maintain Accurate Wage Statements and Employment Records In Violation of California Labor Code §§226, 423, and 1198.5**

### **(Against All Defendants)**

76.    Plaintiff realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

77.    "Employers are required to provide itemized wage statements to employees, containing specified information, all set forth in section 226(a)." *Heritage Residential Care, Inc. v. Div. of Labor Standards Enf't*, 192 Cal. App. 4th 75, 80 (2011). "The requirement is mandatory." *Id.* Each "detachable part of the check" must accurately itemize nine categories of information. Lab. Code §226(a). The categories applicable here include: "(1) gross wages earned, (2) total hours worked . . . , (4) all deductions . . . , (5) net wages earned, (6) the inclusive dates of the period for which

HAEGGQUIST & ECK, LLP

the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number . . . , (8) the name and address of the legal entity that is the employer . . . , and (9) all applicable hourly rates . . . and the corresponding number of hours worked at each hourly rate." *Id.*

78.     Defendants intentionally and willfully failed to provide Plaintiff with complete and accurate wage statements as required under Labor Code §226(a). The deficiencies included, among other things, the failure to accurately list the gross wages earned, accurate rates of pay, net wages earned, hours worked, and the corresponding number of hours worked at each hourly rate by the employee. The wage statements also did not have the last four digits of Plaintiff's social security number or an employee identification number other than the social security number. Defendants' failure was not an isolated and unintentional payroll error due to a clerical or inadvertent mistake, but a knowing and intentional pattern and practice that occurred throughout Plaintiff's employment with Defendants.

79.     As a result of Defendants' failures, Plaintiff is deemed to have suffered injury. Lab. Code §226(e)(2)(A), (B). Specifically, Plaintiff has been injured because he was denied both his legal right to receive, and his protected interest in receiving, accurate itemized wage statements under Labor Code §226(a). In addition, because Defendants failed to provide the accurate hours worked and rates of pay on wage statements, Defendants have prevented Plaintiff from determining if all hours worked were paid at the appropriate rate and the extent of the underpayment.

80.     In addition to accurate wage statements, pursuant to Wage Order 4, an employer "shall keep accurate information with respect to each employee" including "[t]ime records showing when the employee begins and ends each work period." 8 Cal. Code Regs. §11040(7)(A)(3). "Meal periods, split shift intervals and total daily hours worked shall also be recorded." *Id.* In addition, "[t]otal wages paid each payroll period" and "[t]otal hours worked in the payroll period and applicable rates of pay" must be accurately maintained. 8 Cal. Code Regs. §11040(7)(A)(4), (5).

COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES

HAEGGQUIST & ECK, LLP

81.    Pursuant to Labor Code §226(b) an employer is required to maintain employees' wage statements and "shall afford current and former employees the right to inspect or receive a copy of records pertaining to their employment, upon reasonable request to the employer." Lab. Code §226(b); *see also* 8 Cal. Code Regs. §11040(7)(A)-(C) (identify accurate information employers are required to maintain). An employer who receives a written or oral request to receive a copy of these records "shall comply with the request as soon as practicable, but no later than 21 calendar days from the date of the request." Lab. Code §226(c). In addition, pursuant to Labor Code §432, upon request an employer must give an employee a copy of any instrument signed by the employee relating to the obtaining or holding of employment. Any person violating this article is guilty of a misdemeanor. Lab. Code §433.

82.    Finally, pursuant to Labor Code §1198.5(a), every "current and former employee, or his or her representative, has the right to inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance or to any grievance concerning the employee." Lab. Code §1198.5(a). The employer shall make the contents of those personnel records available for inspection at a reasonable time, "but not later than 30 calendar days from the date the employer receives a written request." Lab. Code §1198.5(b)(1).

83.    Here, on June 11, 2024, and again on June 28, 2024, Plaintiff requested in writing to inspect and copy his employment files and records pursuant to the above statutory provisions. More than 30 days have elapsed, and Defendants failed to comply with the request in a timely manner or otherwise make the records available for inspection and copying. In addition, based on information and belief, Defendants failed to maintain accurate records relating to Plaintiff's time records, wage records, and meal and rest periods. As such, Defendants violated Labor Code §§226, 432, 1174, 1198.5, and Wage Order 4.

84.    As a proximate result of the Defendants' unlawful acts, Plaintiff has suffered and continues to suffer harm and "is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Lab. Code §226(e)(1).

85.    In addition, a failure by an employer to permit a current or former employee to inspect or receive a copy of records within the time set forth in Labor Code §226(c) entitles the employee to recover a $750 penalty from the employer. Lab. Code §226(f). An employee may also bring an action for injunctive relief to ensure compliance and is entitled to an award of costs and reasonable attorneys' fees. Lab. Code §226(h). An employee may also recover a "penalty" of $750 from the employer when it fails to permit an employee to inspect or copy personnel records within the times specified by Labor Code §1198.5(b)(1). Lab. Code §1198.5(k). An employee may also bring an action for injunctive relief to ensure compliance and is entitled to an award of costs and reasonable attorney's fees. Lab. Code §1198.5(l).

86.    Defendants' violations of Labor Code §226(a) prevented Plaintiff from knowing, understanding, and disputing the wages paid to him, and resulted in an unjustified economic enrichment to Defendants. As a result of Defendants' knowing and intentional failure to comply with the Labor Code provisions above, Plaintiff has suffered an injury, the exact amount of damages and/or penalties is all in an amount to be shown according to proof at trial.

87.    Plaintiff has had to file this lawsuit to analyze the extent of the underpayment, thereby causing Plaintiff to incur expenses and lost time. Plaintiff would not have had to engage in these efforts and incur these costs had Defendants properly classified Plaintiff and provided the accurate rate of pay. This has also

HAEGGQUIST & ECK, LLP

1  delayed Plaintiff's ability to demand and recover the underpayment of wages from
2  Defendants.

3      88.    Accordingly, pursuant to the above noted laws, including Labor Code
4  §§218, 218.5, 218.6, 226(e)(1), and 1198.5(l), Plaintiff seeks injunctive relief,
5  penalties, costs of suit, including reasonable attorneys' fees, and interest.

## COUNT VII

### Failure to Provide Meal Periods
### In Violation of California Labor Code §§226.7, 512 and Wage Order 4

### (Against All Defendants)

10      89.    Plaintiff realleges and incorporates here by reference every allegation in
11  the preceding and subsequent paragraphs.

12      90.    Plaintiff did not meet the criteria established for exemption as an
13  executive, professional, or administrative employee, and therefore, Plaintiff was a
14  non-exempt employee entitled to the protections of Labor Code §§226.7 and 512
15  throughout his employment with Defendants.

16      91.    Labor Code §512(a) provides that "[a]n employer shall not employ an
17  employee for a work period of more than five hours per day without providing the
18  employee with a meal period of not less than 30 minutes." Lab. Code §512(a).
19  California's accompanying Regulations further provide:

> No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

8 Cal. Code Regs. §11040(11)(A); Wage Order 4 (11)(A).

COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES

HAEGGQUIST & ECK, LLP

92.    Further, an "employer shall not require an employee to work during a meal . . . period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission." Lab. Code §226.7(b). "If an employer fails to provide an employee a meal . . . period . . . , the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal . . . period is not provided." Lab. Code §226.7(c); 8 Cal. Code Regs. §11040(11)(B); Wage Order 4 (11)(B).

93.    During the relevant period, Plaintiff did not receive compliant meal breaks for working more than five and/or ten hours per day because Defendants knowingly failed to ever make such breaks available.

94.    Further, during the relevant period, Defendants failed to pay Plaintiff one additional hour of pay at his regular rate of compensation for each workday that a meal break was missed, late, and/or interrupted pursuant to Labor Code §226.7(c) and Wage Order 4 (11).

95.    As a result of Defendants' failure to provide Plaintiff with duty-free meal breaks and their failure to pay Plaintiff one additional hour of pay at his regular rate of compensation for each workday that a meal break was missed, late, and/or interrupted, Plaintiff suffered and continues to suffer a loss of wages and compensation.

96.    Plaintiff seeks recovery of attorneys' fees, costs, and interest pursuant to, *inter alia*, Labor Code §§218.5 and 218.6.

## COUNT VIII

### Failure to Provide Rest Periods
### In Violation of California Labor Code §226.7 and Wage Order 4

### (Against All Defendants)

97.    Plaintiff realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

HAEGGQUIST & ECK, LLP

98.    Plaintiff did not meet the criteria established for exemption as an executive, professional, or administrative employee, and therefore, Plaintiff was a non-exempt employee entitled to the protections of Labor Code §226.7 throughout his employment with Defendants.

99.    Plaintiff was entitled "to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." 8 Cal. Code Regs. §11040(12)(A); IWC Wage Order 4(12)(A).

100.    "An employer shall not require an employee to work during a . . . rest . . . period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission . . . ." Lab. Code §226.7(b). "If an employer fails to provide an employee a . . . rest . . . period . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the . . . rest . . . period is not provided." Lab. Code §226.7(c); 8 Cal. Code Regs. §11040(12)(B); Wage Order No. 4 (12)(B).

101.    During the relevant period, Defendants. did not provide Plaintiff with the opportunity to take a duty-free, ten-minute rest period for every four hours or major fraction thereof that he worked. Defendants failed to pay Plaintiff one additional hour of pay at his regular rate of compensation for each workday that a rest period was missed, late, and/or interrupted pursuant to Labor Code §226.7(b) and Wage Order 4 (12).

102.    As a result of Defendants' failure to provide Plaintiff with duty-free rest periods and their failure to pay Plaintiff one additional hour of pay at his regular rate of compensation for each workday that a rest period was missed, late, and/or interrupted, Plaintiff suffered and continues to suffer a loss of wages and compensation.

HAEGGQUIST & ECK, LLP

103.   Plaintiff seeks recovery of attorneys' fees, costs, and interest pursuant to, *inter alia*, Labor Code §§218.5 and 218.6.

## COUNT IX

**Failure to Timely Pay Wages Due at Termination
In Violation of California Labor Code §§201 and 203**

**(Against All Defendants)**

104.   Plaintiff realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

105.   Labor Code §201 provides in pertinent part: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Lab. Code §201(a)

106.   Labor Code §203 provides in pertinent part: "If an employer willfully fails to pay . . . in accordance with Sections 201 [and] 202 . . . , any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid . . . ; but the wages shall not continue for more than 30 days." Lab. Code §203(a).

107.   Defendants violated Labor Code §201 by failing to pay Plaintiff all wages due and owing at the time of discharge and/or within 72 hours thereafter. Defendants' failure to pay Plaintiff all wages due and owing was intentional and was not accidental or inadvertent.

108.   Plaintiff is entitled to compensation for all forms of wages earned, but to date has not received such compensation therefore entitling him to penalties under Labor Code §203.

109.   More than 30 days have passed since Plaintiff left Defendants' employ, and he has not received payment pursuant to Labor Code §§201, 202, and 203. Because of Defendants' willful conduct in not paying all earned wages, Plaintiff is entitled to 30 days' wages as a premium wage or penalty under Labor Code §203.

COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES

# COUNT X

### Retaliation and Wrongful Termination
### In Violation of California Labor Code §1102.5

### (Against All Defendants)

110.    Plaintiff realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

111.    Pursuant to Labor Code §1102.5(b):

> An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance . . . , if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

Lab. Code §1102.5(b).

112.    Further, "[a]n employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Lab. Code §1102.5(c).

113.    Plaintiff engaged in protected activity by reporting to Defendants' management that Defendants were unlawfully misclassifying him and other employees as independent contractors, which violated several laws as set forth above in this Complaint. Further, Plaintiff refused to participate in Defendants' unlawful practice.

114.    In response, Defendants retaliated against Plaintiff for engaging in protected conduct and refusing to participate in Defendants' unlawful conduct by, among other things, wrongfully discharging Plaintiff. Alternatively, even though

Plaintiff was discharged and did not quit, to the extent Defendants contend Plaintiff quit by ceasing to perform any work, Plaintiff was constructively discharged because Defendant's officers, directors, managing agents, and/or supervisory employees intentionally created or knowingly permitted working conditions to exist that were so intolerable that a reasonable person in Plaintiff's position would have had no reasonable alternative but to refrain from performing such work and Plaintiff refrained from performing such work because of these unlawful working conditions.

115.  As such, Plaintiff is entitled to recover compensatory and punitive damages from Defendants for his injuries suffered as a result of Defendants' violations of Labor Code §1102.5. Lab. Code §1105; *see also Mathews v. Happy Valley Conf. Ctr., Inc.*, 43 Cal. App. 5th 236, 267, 269 (2019).

116.  As a proximate result of Defendants' wrongful conduct, Plaintiff has suffered, and continues to suffer, substantial losses in earnings, earning capacity, and other benefits of employment, all in an amount to be determined according to proof at the time of trial. Plaintiff will also suffer tax consequences due to Defendants' failure to pay Plaintiff money owed, which will come due in a lump sum in the future. Accordingly, Plaintiff is entitled to an additional amount of damages to offset the tax consequences of a lump sum award for lost earnings, plus interest.

117.  As a further proximate result of Defendants' wrongful conduct, Plaintiff has suffered, and continues to suffer, humiliation, embarrassment, emotional distress, and mental anguish, all in an amount to be determined according to proof at the time of trial.

118.  In performing the acts alleged herein, Defendants acted with oppression, fraud, malice, and with conscious disregard for Plaintiff's rights, and Plaintiff is therefore entitled to punitive damages against Defendants in an amount sufficient to punish and make an example of Defendants to deter further despicable conduct. The retaliatory actions and decisions to wrongfully discharge Plaintiff were authorized, adopted, approved, and/or made by one or more officers, directors, and/or managing

HAEGGQUIST & ECK, LLP

agents of Defendants, including, without limitation, Yury Smagorinsky, Defendants' Vice President of Legal Affairs.

119.   Finally, Plaintiff is entitled to recover his reasonable attorneys' fees and costs pursuant to Labor Code §1102.5(j), and any other applicable provision for attorneys' fees and costs.

## COUNT XI

**Wrongful Termination in Violation of Public Policy**

**(Against All Defendants)**

120.   Plaintiff realleges and incorporates herein by reference each allegation in the preceding and subsequent paragraphs.

121.   Jurisdiction is invoked in this Court pursuant to the public policy and common law of the State of California. *See Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167 (1980); *City of Moorpark v. Superior Ct.*, 18 Cal. 4th 1143, 1155 (1998); *Ferrick v. Santa Clara Univ.*, 231 Cal. App. 4th 1337, 1345 (2014) (reiterating that Labor Code §1102.5 "'reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation'") (citation omitted).

122.   As set forth above, Mr. Hazleton refused to participate in and reported Valnet's unlawful misclassification .

123.   In response, Valnet retaliated against Mr. Hazleton for engaging in protected activity by, among other things, terminating Mr. Hazleton's employment. Thus, Valnet violated the fundamental policies of the State of California as set forth above. Alternatively, even though Plaintiff was discharged and did not quit, to the extent Defendants contend Plaintiff quit by ceasing to perform any work, Plaintiff was constructively discharged because Defendant's officers, directors, managing agents, and/or supervisory employees intentionally created or knowingly permitted working conditions to exist that were so intolerable that a reasonable person in Plaintiff's position would have had no reasonable alternative but to refrain from performing such

33

work and Plaintiff refrained from performing such work because of these unlawful working conditions.

124.   As a proximate result of Valnet's wrongful conduct, Mr. Hazleton has suffered, and continues to suffer, substantial losses in earnings and job benefits in an amount to be determined according to proof at the time of trial.

125.   As a further proximate result of Valnet's wrongful conduct, Mr. Hazleton has suffered, and continues to suffer, humiliation, embarrassment, emotional distress, and mental anguish, all in an amount to be determined according to proof at the time of trial.

126.   Mr. Hazleton is also entitled to costs and reasonable attorneys' fees pursuant to Code of Civil Procedure §1021.5 and any other applicable provision for attorneys' fees and costs.

127.   In doing the acts herein alleged, which were committed, authorized, and/or adopted and approved by Valnet's officers, directors, or managing agents, Valnet acted with oppression, fraud, malice, and in conscious disregard of the rights of Mr. Hazleton. Mr. Hazleton is therefore entitled to punitive damages against Valnet in an amount appropriate to punish and make an example of Valnet.

## <u>COUNT XII</u>

### Violation of California Business and Professions Code §16600.5

### (Against All Defendants)

128.   Plaintiff realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

129.   California has a long-standing public policy favoring open competition and employee mobility, codified in Section 16600 of the Business and Professions Code, which generally voids "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind." Cal. Bus. & Prof. Code §16600(a). California courts have "consistently affirmed" that Section 16600

COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES

HAEGGQUIST & ECK, LLP

"evinces a settled legislative policy in favor of open competition and employee mobility." *Edwards v. Arthur Anderson LLP*, 44 Cal. 4th 937, 946 (2008). "The law protects Californians and ensures 'that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice.'" *Id*. (citation omitted). Pursuant to this well-settled law, the following types of restrictive covenants are void and unenforceable as unlawful non-compete clauses:

(a)    Express covenants not to compete. *Edwards*, 44 Cal. 4th at 945.

(b)    Covenants not to solicit a former employer's customers. *Edwards*, 44 Cal. 4th at 948.

(c)    Covenants not to solicit a former employer's employees. *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 936 (2018).

(d)    Overly broad confidentiality provisions that operate as "de facto" noncompete provisions. *Brown v. TGS Mgmt. Co., LLC*, 57 Cal. App. 5th 303, 318-19 (2020).

130.   California Assembly Bill No. 1076 amended Section 16600 and added Section 16600.1 to the California Business and Professions Code, which became effective on January 1, 2024. Section 16600 now expressly provides that it "shall be read broadly, in accordance with the Supreme Court's opinion in *Edwards v. Arthur Anderson*," which is "not a change in, but declaratory, of existing law." Cal. Bus. & Prof. Code §16600(b); *see, e.g.*, *Edwards*, 44 Cal. 4th at 948 (broadly holding that, that in addition to express non-compete agreements, a customer non-solicitation covenant is an invalid non-compete agreement under §16600).

131.   Here, Defendants included unlawful restrictive covenant clauses in its Master Service Agreements that have long been held as unlawful noncompete clauses. Specifically, ¶¶4.10 and 4.11 of the Agreements include the following unlawful provisions, which provide that during the period of work and for at least six months following the termination of employment (¶4.10.1), the worker shall not:

4.10.2        Solicit or attempt to solicit or to induce, directly or indirectly, any business from any customers/clients of Valnet with whom the [worker] had contacts during the term of [the working relationship];

4.10.3        Recruit, hire, or attempt to recruit or hire, directly or indirectly, any employee, contributor or resource of Valnet;

4.11        Solicit or attempt to solicit or to induce, directly or indirectly, any leads (companies that Valnet is contemplating acquiring even partially) or potential acquisition targets, including prospective targets without exception, with whom [the worker] had contacts during the term of [the working relationship].

Ex. 1 at 4.

132.   These broad restrictive covenant provisions are not necessary to protect Defendants' legitimate interests and only work to restrict employee mobility and healthy and open competition. Such provisions are unlawful. *Edwards*, 44 Cal. 4th at 948; *AMN Healthcare, Inc.*, 28 Cal. App. 5th at 936; Cal. Bus. & Prof. Code §16600. Not only do these provisions evidence that Defendants exercised control akin to an employer-employee relationship, but they impact workers' ability to have mobility and compete in this industry. "It shall be unlawful to include a noncompete clause in an employment contract, or to require an employee to enter a noncompete agreement . . . ." Cal. Bus. & Prof. Code §16600.1(a); *see also* §16600.5(c) (an employer "shall not enter into a contract with an employee . . . that includes a provision that is void under this chapter"). "Any contract that is void under this chapter is unenforceable regardless of where the contract was signed." Cal. Bus. & Prof. Code §16600.5(a).

133.   Moreover, Section 16600.1 of the Business and Professions Code required Defendants, by February 14, 2024, to notify all current and former California employees (employed any time after January 1, 2022) who had entered the restrictive covenant agreements that its violative clauses are void. Cal. Bus. & Prof. Code §16600.1(b)(1). The notice "shall be in the form of a written individualized communication to the employee or former employee, and shall be delivered to the last known address and the email address of the employee or former employee." Cal. Bus.

& Prof. Code §16600.1(b)(2). A violation of this section constitutes an act of unfair competition within the meaning of the UCL, Business and Professions Code §17200. Cal. Bus. & Prof. Code §16600.1(c).

134.   "An employer that enters into a contract that is void under this chapter or attempts to enforce a contract that is void under this chapter commits a civil violation." Cal. Bus. & Prof. Code §16600.5(d). "An employee, former employee, or prospective employee may bring a private right of action to enforce this chapter for injunctive relief or the recovery of actual damages, or both." Cal. Bus. & Prof. Code §16600.5(e)(1). In addition, "a prevailing employee, former employee, or prospective employee in an action based on a violation of this chapter shall be entitled to recover reasonable attorney's fees and costs." Cal. Bus. & Prof. Code §16600.5(e)(2).

135.   As discussed in this Complaint, Defendants required Plaintiff and all their Content Creators to enter agreements with unlawful clauses in violation of Business and Professions Code §§16000, *et seq*. Defendants failed to provide notice by February 14, 2024, to Plaintiff or any of their other employees that the agreements were void.

136.   As a result, Plaintiff has been harmed by Defendants' unlawful conduct and seeks injunctive relief and recovery of actual damages because of Defendants' misconduct of requiring him to enter a contract that is void, failing to give Plaintiff lawful notice the contract is void, and attempting to enforce a contract that is void. Without injunctive relief, Defendants will continue to try to enforce their void contract on Plaintiff, resulting in continued damage and disruption to Plaintiff's lawful right to pursue a career outside of Defendants' employ.

137.   As a proximate result of Defendants' wrongful conduct, Plaintiff has suffered, and continues to suffer, substantial losses in earnings, earning capacity, and other benefits of employment, all in an amount to be determined according to proof at the time of trial. Plaintiff will also suffer tax consequences due to Defendants' failure to pay Plaintiff damages owed, which will come due in a lump sum in the

future. Accordingly, Plaintiff is entitled to an additional amount of damages to offset the tax consequences of a lump sum award for lost earnings, plus interest.

138.   As a further proximate result of Defendants' wrongful conduct, Plaintiff has suffered, and continues to suffer, humiliation, embarrassment, loss of enjoyment of life, emotional distress, and mental anguish, all in an amount to be determined according to proof at the time of trial.

139.   In performing the acts alleged, which were committed, authorized, and/or adopted and approved by Defendants' officers, directors, or managing agents, Defendants acted with oppression, fraud, malice, and with conscious disregard for the rights of Plaintiff and Plaintiff is therefore entitled to punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

140.   Plaintiff is also entitled to and seeks attorneys' fees and costs pursuant to Business and Professions Code §16600.5(e)(2), because of Defendants' wrongful conduct.

## <u>COUNT XIII</u>

**Violation of the Unfair Competition Law**
**California Business & Professions Code §§17200, *et seq*.**

**(Against All Defendants)**

141.   Plaintiff realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

142.   Defendants are "persons" as defined under Business and Professions Code §17021. Each of the directors, officers, and/or agents of Defendants are equally responsible for the acts of the others as set forth in Business and Professions Code §17095.

143.   The actions of Defendants constitute unlawful, unfair and fraudulent business practices within the meaning of Business and Professions Code §17200, *et seq*.

144.    As described above, Defendants have conducted the following unlawful activities:

(a)    violation of Business and Professions Code §§16600 – 16600.5;

(b)    violation of Labor Code §§201, 203, 204, 207, 218, 226, 226.6, 226.7, 226.8, 246, 247, 247.5, 432, 432.5, 510, 551, 552, 553, 558, 1102.5, 1174, 1182.12, 1194, 1197, 1197.1, 1198.5, 2775, 2778, 2800, 2802, 3550, 3551, 2808, and 2810.5;

(c)    wrongful termination in violation of public policy; and

(d)    violation of 26 U.S.C. §§3102(a), 3102(b), 3402, 3403, 7201, 7202, 7206(1), 7212(A), and 18 U.S.C. §371.

145.    Defendants' activities also constitute unfair practices in violation of Business and Professions Code §17200, *et seq.*, because its practices violate the above noted laws, and/or violate an established public policy, and/or the practice was immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiff, other employees, the public, the government, and competition.

146.    The identified violations constitute business practices because they were done repeatedly over a period, and in a systematic manner to the detriment of Plaintiff other employees, the public, the government, and competition.

147.    As a result of Defendants' violations as noted above, Plaintiff has suffered injury-in-fact and has lost money as a result. This injury-in-fact and loss of money consists of the lost wages and other restitutionary remedies provided by the identified laws and other resulting harms. Plaintiff is entitled to restitution, an injunction, declaratory relief, and other equitable relief against such unlawful practices to prevent future damage for which there is no adequate remedy at law.

148.    As a direct and proximate result of the unfair business practices of Defendants, Plaintiff is entitled to equitable and injunctive relief, including full restitution of all wages which have been unlawfully lost as a result of the business acts and practices described herein, and enjoining Defendants to cease and desist from

HAEGGQUIST & ECK, LLP

engaging in the practices described herein for the maximum time permitted pursuant to Business and Professions Code §17208, including any tolling.

149.    Plaintiff is also entitled to attorneys' fees, pursuant to Code of Civil Procedure §1021.5, and any other applicable provision for attorneys' fees and costs, based upon the violation of the underlying public policies.

## COUNT XIV

### Additional PAGA Penalties
### California Labor Code §§2698, *et seq.*

### (Against All Defendants)

150.    Plaintiff realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

151.    Defendants are "persons" within the meaning of Labor Code §2699(b).

152.    Plaintiff and Content Creators are "aggrieved employees" within the meaning of Labor Code §2699(c).

153.    Defendants failed to "cure" the alleged violations of the Labor Code within 33 calendar days of Plaintiff's written notice to Defendants and the LWDA regarding specific provisions of the California Labor Code alleged to have been violated. To date, Defendants have failed to cure the alleged Labor Code violations.

154.    Any provision of the Labor Code that provides for a civil penalty to be assessed and collected by the LWDA or any of its departments, divisions, commissions, boards, agencies, or employees for violation of the code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself and other current or former employees pursuant to the procedures specified in Labor Code §2699.3.

155.    For all provisions of the Labor Code where a civil penalty is not "specifically provided," Labor Code §2699(f) establishes a civil penalty for violations of the Labor Code. If, "at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved

HAEGGQUIST & ECK, LLP

employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation." Labor Code §2699(f)(2).

156.   As set forth above in this Complaint, Defendants violated, *inter alia*, the following Labor Code provisions:

(a)    Labor Code §§201-203, by failing to timely pay all wages due at time of discharge.

(b)    Labor Code §204, by failing to pay all wages due and owing, including minimum wage and overtime wages, at least twice during each calendar month.

(c)    Labor Code §207, by failing to keep posted conspicuously at the place of work, or otherwise where it can be seen as employees work, a notice specifying the regular pay days and the time and place of payment.

(d)    Labor Code §226, by failing to furnish or maintain accurate wage statements and for failing to make the records available for copying and/or inspection. Labor Code §226.3, which provides for a civil penalty against Defendants for their failure to provide Plaintiff and Content Creators accurate wage statements and for their failure to maintain accurate records in violation of Labor Code §226, in the amount of two hundred fifty dollars ($250) per employee per in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation. In addition, Defendants may be fined an additional $1,000 for such violations under Labor Code §226.6.

(e)    Labor Code §226.7, by failing to provide Plaintiff and Content Creators with meal or rest recovery periods in accordance with California state law.

(f)    Labor Code §226.8, by willfully misclassifying Plaintiff and Content Creators as independent contractors (which is set forth fully in Count I above).

HAEGGQUIST & ECK, LLP

41

(g)     Labor Code §246, by failing to provide Plaintiff and Content Creators with the ability to accrue paid sick days.

(h)     Labor Code §247, by failing to post in a conspicuous place a poster containing all requisite information regarding paid sick days.

(i)     Labor Code §247.5, by failing to maintain for at least three years records documenting the hours worked and paid sick days accrued by Plaintiff and Content Creators.

(j)     Labor Code §432, by failing to provide Plaintiff and Content Creators a copy of signed instruments upon their request.

(k)     Labor Code §432.5, by requiring Plaintiff and Content Creators to agree, in writing, to terms and conditions known by Defendants to be prohibited by law.

(l)     Labor Code §510, by failing to pay Plaintiff and Content Creators at the applicable overtime rates for work in excess of eight hours in one workday, work in excess of 40 hours in any one workweek, and/or hours worked on the seventh consecutive day of work in any one workweek.

(m)     Labor Code §§551-553, by causing Plaintiff and Content Creators to work more than six days in seven.

(n)     Labor Code §558, which provides for civil penalties against Defendants for violating provisions of the Labor Code regulating hours and days of work, in the amount of fifty dollars ($50) for any initial violation for each underpaid employee for each pay period for which the employee was underpaid, and one hundred ($100) for each subsequent violation. Lab. Code §558(a)(1)-(3).

(o)     Labor Code §1102.5, by retaliating against Plaintiff for engaging in protected conduct and refusing to participate in unlawful conduct.

(p)     Labor Code §1174(d), by failing to keep at a central location all payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees.

HAEGGQUIST & ECK, LLP

(q) Labor Code §1182.12, which sets forth the minimum wage for all industries, which Defendants violated in failing to pay Plaintiff and Content Creators the minimum wage for all hours worked.

(r) Labor Code §1194, by failing to pay Plaintiff and Content Creators the legal minimum wage and applicable overtime compensation.

(s) Labor Code §1197, by failing to pay Plaintiff and Content Creators the legal minimum wage.

(t) Labor Code §1197.1, which provides for civil penalties, restitution of wages, and liquidated damages against Defendants for failing to pay Plaintiff and Content Creators a wage less than the applicable minimum wage, in the amount of one hundred dollars ($100) for any initial violation that is intentionally committed for each underpaid employee for each pay period for which the employee is underpaid, and two hundred fifty dollars ($250) for each subsequent violation. Lab. Code §1197.1(a)(1)-(2). Plaintiff and Content Creators are also entitled to all wages, liquidated damages, and any applicable penalties imposed pursuant to Section 203. Lab. Code §1197.1(a)(3).

(u) Labor Code §1198.5, by failing to maintain personnel files and for failing to allow Plaintiff the right to inspect and receive a copy of his personnel files.

(v) Labor Code §§2775 and 2778, by unlawfully misclassifying Plaintiff and Content Creators as independent contractors.

(w) Labor Code §2800, by unlawfully contractually refusing to indemnify their employees for losses caused by the employers' want of ordinary care.

(x) Labor Code §2802, by unlawfully contractually refusing to indemnify Plaintiff and Content Creators for all necessary expenditures or losses incurred in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of Defendants.

(y) Labor Code §§3550 and 3551, by failing to post and provide required workers' compensation notices.

HAEGGQUIST & ECK, LLP

(z)     Labor Code §2808, which required Defendants to provide Plaintiff and Content Creators an outline of coverage or similar explanation of all benefits provided under Defendants' sponsored health coverage, which Defendants failed to do at any time, including at the time of termination and/or resignation.

(aa)    Labor Code §2810.5, which required Defendants to provide written notices to Plaintiff and Content Creators containing certain information such as the rates of pay, allowances, regular pay day, addresses, etcetera, which, based on information and belief, Defendants failed to do.

157.   To the extent any civil penalty under the Labor Code is to be assessed and collected by the LWDA or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of the Labor Code, pursuant to PAGA, Labor Code §2699(a), Plaintiff seeks all such applicable civil penalties on behalf of himself and Content Creators pursuant to the procedures specified in Labor Code §2699.3.

158.   To the extent a civil penalty is not specifically provided, Plaintiff seeks to recover all civil penalties under PAGA, Labor Code §2699(f)(2), on behalf of himself and Content Creators, for the Labor Code violations set forth above.

159.   Plaintiff also seeks the recovery of attorneys' fees and costs pursuant to Labor Code §2699(g).

## PRAYER

WHEREFORE, Plaintiff seeks judgment as follows:

A.     For compensatory damages, including unpaid wages (past and future), loss of wages and benefits (past and future), and emotional distress damages (past and future) according to proof at trial;

B.     For civil and statutory penalties under the Labor Code;

C.     For attorneys' fees and costs of suit pursuant to Labor Code §§218.5, 226(e)(1), 226(h), 1102.5(j), 1194(a), 1194.3, 1198.5(l), 2699(g), and 2802(b), Code of Civil Procedure §1021.5, paragraph 4.11 of the Master Services Agreement (Ex. 1), and any other applicable provision for attorneys' fees and costs;

COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES

HAEGGQUIST & ECK, LLP

D.      Liquidated damages pursuant to, *inter alia*, Labor Code §1194.2;

E.      For pre-judgment and post-judgment interest to the extent allowable by law, including without limitation, pursuant to Labor Code §218.6;

F.      For restitution and injunctive and declaratory relief;

G.      For punitive and exemplary damages, according to proof; and

H.      For such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims.

Dated: December 10, 2024             HAEGGQUIST & ECK, LLP
                                     ALREEN HAEGGQUIST (221858)
                                     AARON M. OLSEN (259923)
                                     ANNA C. SCHWARTZ (346268)

                                     By:      /s/ Aaron M. Olsen
                                              AARON M. OLSEN

                                     225 Broadway, Suite 2050
                                     San Diego, CA  92101
                                     Telephone: (619) 342-8000
                                     Facsimile: (619) 342-7878

                                     Attorneys for Plaintiff Nicholas Hazleton

HAEGGQUIST & ECK, LLP

COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES

EXHIBIT 1

**MASTER SERVICES AGREEMENT ("AGREEMENT")**
**EXECUTED ON December 8 2022 (THE "EFFECTIVE DATE")**

BETWEEN:                          **VALNET INC**., a corporation duly incorporated under the laws of Canada, having its head office at 7405 TransCanada Highway, Suite 100, Montreal, Quebec, H4T 1Z2;

                          (hereinafter referred to as "**Valnet**");

AND:                          Nicholas James Hazleton, a person domiciled and residing at3779 San Ramon Drive Apt. 255 Oceanside, CA 92057;

                          (hereinafter referred to as "**Service Provider**");

                          (Valnet and Service Provider jointly referred to as the "**Parties**" and individually as a "**Party**")

**WHEREAS** Valnet is the owner and operator of various Assets (as defined herein) and seeks to purchase various Services (as defined herein) for exclusive use on its Assets.

**WHEREAS** Valnet wishes to retain the Service Provider for the provision of the Services as set out in a Statement of Work (as defined hereafter);

**NOW, THEREFORE** in consideration of the premises herein and for other good and valuable consideration, the Parties agree as follows:

1.  **DEFINITIONS AND INTERPRETATION**

    1.1. <u>Definitions</u>. Unless the context otherwise requires, the following terms have the following meanings:

        1.1.1. "**Animated Production**" shall refer to an animated audio video montage and if so requested containing captions/voice over including any post production work;

        1.1.2. "**Article**" shall refer to a literary work edited by the Editor and approved by Valnet in accordance with this Agreement;

        1.1.3. "**Assets**" includes Channels, Websites, related social media accounts and any other assets or properties owned and/or operated by Valnet;

        1.1.4. "**Backlink**" shall refer to incoming, 'do-follow' links that were negotiated on prospecting websites, back to Valnet Websites;

        1.1.5. "**Business Day**" means any day except Saturday, Sunday and any other day on which financial institutions are generally not open for business in the city of Montréal, Province of Québec (Canada);

        1.1.6. "**Channel**" shall refer to the YouTube Channels owned by Valnet;

        1.1.7. "**Competitor**" shall refer to an organization that operates any websites, YouTube channels or other any other types of properties that compete with or are similar to the Assets including the production of all children-oriented entertainment content as well as any list channels found on YouTube;

        1.1.8. "**Data**" shall refer to information entered by a Prospecting Specialist and approved by Valnet in accordance with this Agreement and/or SOW;

        1.1.9. "**Editor**" shall refer to the definition in a SOW;

        1.1.10.  "**Effective Date**" shall refer to the date this agreement is signed;

1.1.11. "**Production**" includes a Video Production, Animated Production or Voice Over Production;

1.1.12. "**Prospect**" shall refer to websites that have had the necessary data retrieved, as predetermined by Valnet;

1.1.13. "**Prospecting Specialist**" shall refer to the definition in a SOW;

1.1.14. "**Publisher**" shall refer to the definition in a SOW;

1.1.15. "**Script**" shall refer to a completed written text for Video Productions;

1.1.16. "**Video Production**" shall refer to an audio video montage (as per this agreement) and if so requested containing captions/voice over including any post production work;

1.1.17. "**Voice Over Production**" shall refer to the narration or dialogue completed by a narrator as per the present agreement;

1.1.18. "**Websites**" shall refer to all present and future websites owned and operated (directly and indirectly) by Valnet or any subdomain thereof including all present and future websites and all associated social media platforms;

1.1.19. "**Work Product**" shall include all intellectual property rights including written articles, any Production and any narration, animation, artwork, music, sound design or other composition, on screen hosting or other work/services which there is a creation of copyrightable content. Included in the definition are any work or materials contributed related to the Services, being specially ordered and commissioned by Valnet through a SOW for use in connection with its Assets as well as all and any other entities/subsidiaries;

1.1.20. "**Writer**" shall refer to the definition in a SOW.

1.1. <u>Currency.</u> Unless otherwise specified, an amount in currency is inUS dollars.

1.2. <u>Entire Agreement.</u> This Agreement, including any Statement of Work and all documents attached hereto or specifically referred to, constitutes the entire agreement between the Parties relating to its subject matter and supersedes all prior agreements, quotes, discussions, negotiations, and representations, whether oral or written, related to its subject matter.

1.3. <u>Headings and Reference</u>. The division of this Agreement into articles, sections, paragraphs and other subdivisions and the insertion of headings are for convenience of reference only and will not affect the interpretation of this Agreement. "Article", "Section" or "Exhibit" refers to the specified article, paragraph, subparagraph, other subdivision, or schedule of or to this Agreement.

## 2. PURPOSE

This Agreement consists of the terms and conditions under which Valnet may issue to the Service Provider Statements of Work (as defined herein) to perform professional services during the Term (as defined herein). Each such Statement of Work shall be governed by the terms and conditions herein unless the Statement of Work in question expressly provides otherwise.

## 3. PURPOSE

3.1. It is expressly agreed between the parties that Service Provider, in rendering the Services in virtue of the Agreement or any SOWs, acts as an independent contractor and not as an employee or agent of Valnet. If applicable as per Canadian status, Service Provider recognizes that, in virtue of its status as an independent contractor, it is entirely responsible for the allocation of applicable sums to be remitted to various governmental ministries and/or agencies, notably but not limited to the provincial and federal revenue agencies, the

*Commission de l'assurance-emploi*, and the *Commission de la santé et de la securité du travail du Québec*. The Parties hereby acknowledge and agree that each is an independent contractor, that neither Party shall be considered to be the agent, representative, master or servant of the other for any purpose whatsoever, and that neither Party has any authority to enter into any contract, to assume any obligations or to give any warranties or representations on behalf of the other Party hereto.  Consequently, Service Provider does not benefit from any social benefit, nor does he/she participate in any pension or employee plan of any kind.

3.2. In relation to the United States, Service Provider shall be an independent contractor, and not an employee of Valnet, within the meaning of all federal, state and local laws and regulations governing employment insurance, workers' compensation, industrial accident, labor and taxes of the United States. Valnet shall not be liable for employment or withholding taxes respecting Service Provider. Service Provider shall not, by reason of this Agreement or any SOW, acquire any benefits, privileges or rights under any benefit plan operated by Valnet or its subsidiaries or affiliates for the benefit of their employees, including, without limitation, (i) any pension or profit-sharing plans or (ii) any plans, coverage or benefits providing worker's compensation, medical, dental, disability or life insurance protection.

## 4.  SERVICES

4.1. <u>Scope of Services</u>. The Parties agree that the Service Provider shall, at Valnet's request, perform professional services for Valnet. Such Services (as defined in the individual Statement of Work) will be requested based on Valnet's needs. Each mandate will be attributed by Valnet to the Service Provider and separately described and agreed to in a separate document referencing this Agreement (a "Statement of Work").

4.2. <u>Statement of Work</u>. If and when required, Valnet will request from the Service Provider, in writing, to perform Services through a Statement of Work exhibit ("SOW"). The Parties shall complete and execute a SOW to acknowledge their agreement on the SOW terms. Each executed SOW shall form part and be governed by the terms and conditions of this Agreement. Notwithstanding the signature of this Agreement, Valnet shall have no obligation to request any SOW or otherwise request services from Service Provider.

4.3. <u>Subcontractors</u>. The Service Provider may not use subcontractors for the provision of any portion of the Services hereunder without the prior written consent of Valnet.

4.4. <u>Re-performance of Services</u>. If Valnet believes the Services provided hereunder or any portion thereof do not comply with the terms of the SOW or this Agreement, Valnet shall promptly notify the Service Provider to permit the Service Provider an opportunity to investigate. If the Services do not meet the applicable standard of care, the Service Provider will promptly re-perform the Services at no additional cost to Valnet, including assisting Valnet in selecting remedial actions.

4.5. <u>Suspension of work</u>. Valnet may suspend the work on a SOW or any part thereof at any time. During the period of suspension, Valnet shall pay all unavoidable costs and expenses reasonably incurred by the Service Provider with respect to said suspension, upon the Service Provider providing satisfactory evidence of same. Upon receipt of written notice from Valnet, the Service Provider shall promptly resume the work on such SOW.

4.6. It is expected that Service Provider shall be available to provide the Services detailed in a

SOW to Valnet at such times as may be reasonably requested by Valnet and mutually agreed to by Service Provider. Service Provider shall use its best efforts to perform faithfully and efficiently the Services detailed in a SOW. Service Provider agrees and understands that the Services and Materials must be submitted in a timely fashion as stipulated and demanded by Valnet without delay. Time is of the essence.

4.7. Service Provider acknowledges that quality work submitted to Valnet shall be deemed acceptable at the sole and unfettered discretion of Valnet. Any work not deemed acceptable shall not be considered submitted and compensated as per the following agreement.

4.8. If so applicable, any captions or voice over shall be in the English language (or as otherwise instructed), in accordance with Valnet's instructions and directives.

4.9. Valnet shall be under no obligation to credit Service Provider.

4.10. Service Provider acknowledges that the Productions submitted shall be exclusive to Valnet and may not be sold, reproduced, distributed, or appear in any manner on any other website, production company, etc. whatsoever. The Service Provider may showcase the Work Product and/or Productions as part of its portfolio with proper credit to the Websites/Valnet. Such portfolio may not be sold or used for commercial purposes.

4.10.1. During the term of a SOW and for a period of six (6) months following the termination of said SOW, Service Provider shall not:

4.10.2. Solicit or attempt to solicit or to induce, directly or indirectly, any business from any customers/clients of Valnet with whom the Service Provider had contacts during the term of a SOW;

4.10.3. Recruit, hire, or attempt to recruit or hire, directly or indirectly, any employee, contributor or resource of Valnet;

4.11. Solicit or attempt to solicit or to induce, directly or indirectly, any leads (companies that Valnet is contemplating acquiring even partially) or potential acquisition targets, including prospective targets without exception, with whom Service Provider had contacts during the term of a SOW. For the purpose of this Section 4.11.3, "targets, leads and/or potential targets/leads" shall mean any individual and or organization in which Valnet has expressed an interest in exploring a future acquisition.

In the event of a breach of the provisions of this Section 4.11, Valnet shall be entitled to an injunction restraining Service Provider from violating the provisions of this Section 4.11. Nothing herein shall be construed as prohibiting Valnet from pursuing any other remedies available to Valnet, including the recovery of damages and attorneys' fees, for a breach or threatened breach of this Section 4.11.

4.12. Service Provider shall be responsible for his/her own office and administrative related equipment including but not limited to computers, telephones, etc.

4.13. Valnet shall review the Work submitted, should Valnet require any modifications, Service Provider will comply before finalizing the Work.

4.14. Service Provider is expected to design its own production pipeline; this may include

third parties or external professionals (in accordance with Section 4.3 herein) in order to achieve the objectives, set out.

5.  **PRICE AND PAYMENT**

    5.1. Price (fees and expenses) for the Services shall be contained in each SOW and may be fixed or estimated (if the work is performed on a "time and material" basis).

    5.2. In the case of a SOW performed on a "time and material" basis, the estimated price shall be based on the anticipated hours of services to be provided multiplied by Service Provider's Billing Rates and shall include all expenses (the "Estimated Price"), but shall exclude applicable sales taxes. Should the Service Provider expect the actual price for a SOW to exceed the Estimated Price contained therein, the Service Provider shall immediately notify Valnet in writing. Should Valnet agree to a revised price estimate, the Parties shall amend and execute a revised SOW to acknowledge such price increase. No price increase shall be valid, and Valnet shall not pay for any costs in excess of the Estimated Price unless approved in a SOW signed by the Parties.

    5.3. Service Provider shall be paid out on the 1st and 16th every month by Valnet unless provided otherwise in a SOW. If the 1st or the 16th of the month fall on a weekend or a statutory holiday, you will receive payment on the following business day. The following is subject to change with notification.

    5.4. Service Provider shall only be paid out once the work is eligible to be paid out. The work is eligible to be paid out 15 days after it is published. Once deemed eligible by Valnet, Service Provider will be paid out on the following pay out date.

6.  **INTELLECTUAL PROPERTY & CONFIDENTIALITY**

    6.1. Work Product contributed by Service Provider hereunder shall be considered a "work made for hire" as defined by the copyright laws of Canada and the United States. Valnet shall be the sole and exclusive owner and copyright proprietor of all Work Product, rights, and title in and to the results and proceeds of Service Provider's Services hereunder in whatever stage of completion. If for any reason the results and proceeds of Service Provider's Services hereunder are determined at any time not to be a "work made for hire", Service Provider hereby irrevocably transfers and assigns to Valnet all right as of the date of creation, all title and interest therein, including all copyrights, as well as all renewals and extensions thereto.

    6.2. Service Provider hereby irrevocably assigns to Valnet all right, title and interest in the Work Product submitted, including but not limited to all copyrightable materials/work submitted by Service Provider for Valnet during the term of this Agreement and any SOW. Valnet shall be deemed copyright owner of Work Product and shall have the right to use, adapt or change the Work Product in any way Valnet deems appropriate. Nothing in this Agreement or any SOW shall require Valnet to exhibit or publicize the Work Product. Service Provider shall execute, acknowledge, and deliver to Valnet any required assignment or instrument as Valnet deems necessary or desirable to evidence, protect, enforce or defend its rights or title in or to the Work Product or any part thereof.

    6.3. Valnet shall own and have the right to use the Work Product in all markets and media, now or hereafter known throughout the world in perpetuity, without further compensation to Service Provider. Furthermore, Valnet shall, at its sole discretion, have the right to modify, change or otherwise edit the Work Product in any manner whatsoever.

6.4.  Service Provider hereby irrevocably assigns and grants to Valnet the entire and exclusive property of all copyrights, proprietary rights and any other rights, title, and interest it shall or may have in and to the Work Product, including without limiting the generality of the foregoing, the rights below described, which are intended to be and agreed to be exclusive, unlimited, perpetual and worldwide.

6.5.  <u>Acknowledgment of Rights</u>. Once transferred, Service Provider hereby acknowledges and agrees that it shall have no copyright, proprietary right or any other right, title, and interest in or to (a) the Work Product (b) the images and (c) the website.

6.6.  <u>Moral Right</u>. Valnet shall have the unlimited and absolute right to change, alter, revise, add to or delete from the Work Product, in its sole discretion, as well as the rights to combine the Work Product furnished or created by others and to authorize the execution of any of the aforesaid acts. Service Provider hereby waives any and all moral rights he may have in the Work Product, both on its own behalf and on behalf of its heirs, executors and administrators, subject only to those rights specifically reserved in this Agreement or any SOW.

6.7.  Any and all trademarks, copyright and all trademarks, copyrights and other intellectual property belonging to Valnet associated or not with any Assets (wordmark, logo, etc.) shall remain the exclusive property of Valnet and may not be used without authorization or permission.

6.8.  <u>Valnet Property</u>. The Service Provider acknowledges that any document, equipment, Confidential Information (as defined hereafter) and any other property of Valnet or its affiliates including without limitation, any file, work, document, sample, model, plan, mark-up, film, records, sketches, drawings, letters, reports, materials, images, songs, equipment, discs, tapes, CDs or estimate, directly or indirectly related to the business of Valnet, which may be removed from the premises or taken or shared from computers of Valnet or any of its affiliates, shall remain the exclusive property of Valnet or its affiliates and shall be returned immediately upon request and at any time at the termination of this Agreement or any applicable SOW.

6.9.  In the event that Service Provider is granted access to Valnet's Google Analytics, Service Provider acknowledges that the Google Analytics is considered Confidential Information as defined herein and should only be used in relation to the Services rendered for Valnet in a SOW and should not be shared with any third party.

6.10.     Service Provider acknowledges and agrees that the nature of Services that it is to provide on behalf of Valnet involves the utilization of information, which is proprietary to the Valnet and shall be kept secret at all times. Service Provider acknowledges and agrees that the unauthorized disclosure, use and/or dissemination of such secret and confidential information would cause irreparable damage to the Valnet. Service Provider agrees not to divulge, disclose, or communicate to any person, firm, or corporation at any time, during or after the present Agreement in any fashion, form or manner, either directly or indirectly, any information of any kind, nature, or description concerning any matters affecting or relating to the business of Valnet or Service Provider's Services with Valnet which specifically includes any matter whatsoever concerning the Valnet, its subsidiaries, divisions or affiliated companies (collectively referred to hereafter as "Confidential Information"). The Parties agree that Confidential Information includes, without limiting the generality of the foregoing, the analytical statistics of Valnet's assets, the strategies behind its productions,

video montage, copyright policies and procedures, licensing & licensing agreement, internal policies, research, development, inventing, accounting, computer hardware configuration, computer software, source code, manufacturing, engineering, merchandising, equipment, or any other information of, about, or concerning the business of Valnet or the business of customers of Valnet, its manner of operation, its plans, processes, or other data of any kind, nature, or description, without regard to whether any or all of the foregoing matters would be deemed confidential, material, or important. The Parties agree that the above matters are important, material, and confidential and gravely affect the effective and successful conduct of the business of Valnet, and its goodwill, and that any breach of the terms of this paragraph is a material breach hereof.

7.  **INDEMNIFICATION**

7.1. <u>Indemnity</u>. To the extent permitted by law, the Service Provider agrees to indemnify, defend, and hold harmless Valnet and its directors, officers, shareholders and employees from and against any liability (including without limitation, reasonable costs and attorneys' fees) incurred by Valnet to the extent caused by the Service Provider's negligent acts, errors or omissions, including judgments in favor of any person.

7.2. <u>Setoff</u>. In the event the Service Provider owes Valnet any amounts under this Agreement and/or any SOW, Valnet reserves the right to set-off and compensate against any amounts due or payable to the Service Provider.

8.  **SERVICE PROVIDER REPRESENTATIONS**

The Service Provider hereby represents and warrants that:

8.1. The Service Provider, if an entity, is duly constituted and validly subsisting under the laws of its jurisdiction of incorporation or a person;

8.2. The Service Provider has all requisite power, legal capacity and authority to enter into this Agreement and/or any SOW and to perform its obligations in accordance with the terms of this Agreement and/or any SOW;

8.3. There are no known claims pending, threatened or anticipated and there is no litigation or proceeding that would have a material adverse effect on the ability of the Service Provider to perform its obligations hereunder;

8.4. The Service Provider is qualified to carry on business in all the jurisdictions where each SOW is to be performed or delivered;

8.5. The Service Provider will be legally authorized to perform each SOW and will hold all required permits, certificates and licenses to perform the services thereunder;

8.6. The Service Provider is familiar with the codes, standards and guidelines referenced in the specifications detailed in a SOW, as applicable;

8.7. The Work Product will be a wholly original expression of Service Provider and shall not be copied in whole or in part from any copyrighted work, except for the material submitted to Service Provider by Valnet;

8.8. To the best of Service Provider's knowledge, information and belief, any Work Product will not violate or infringe upon the rights to privacy of any person, and shall not constitute libel or slander of any person or entity;

8.9. To the best of Service Provider's knowledge, information and belief, it will not violate or infringe upon the copyright, property rights or moral rights or any person or entity;

8.10.     Service Provider has not made or will not make any grant or deed which might or will conflict with or impair the complete enjoyment of the rights and privileges granted to Valnet hereunder;

8.11.     The stated warranties and representations stated in this Section 8 are effective and shall be deemed effective as the completion of a SOW;

8.12.     Any and all resources made available to Service Provider including but not limited to stock footage, video, footage, audio music libraries, databases, etc... shall be used exclusively for the purposes of this Agreement and any applicable SOW without exception;

8.13.     Should the Service Provider utilize exclusive footage (created and wholly owned by the Service Provider) it shall obtain all necessary releases, disclaimers and notify Valnet that exclusive footage is utilized in the Work Product;

8.14.     Service Provider shall not publicly state it is the creator and/or owner of the Work Product in any manner if Service Provider is not the creator and/or owner of the Work Product;

8.15.     Service Provider shall not use any of the Work Product used for any other third party or itself without exception.

9. **TERMINATION & SURVIVAL**

9.1. <u>Survival.</u> The provisions of Sections 3, 5, 7, 8, 9 and 10 shall survive the termination or expiration of this Agreement;

9.2. Term and Termination:

9.2.1. This Agreement shall be effective for a period of 36 Months from the Effective Date. No SOW shall be executed thereafter;

9.2.2. Valnet may, at its sole discretion, terminate this Agreement or a SOW at any time upon written notice to the Service Provider. Valnet shall pay Service Provider for all fees for the services rendered up to the date of termination, upon the Service Provider providing satisfactory evidence of same;

9.2.3. Service Provider may terminate this Agreement or a SOW upon 7-day prior notice to Valnet;

9.2.4. The termination of this Agreement shall be without prejudice to the rights and remedies of the Parties accrued prior to termination;

9.2.5. Upon termination of this Agreement, the Service Provider shall, and shall cause all of its

subcontractors, to:

a) deliver to Valnet any documents or deliverables in accordance with this Agreement;

b) promptly return to Valnet all materials, equipment and any Confidential Information provided by Valnet or Valnet's representative.

9.2.6. In no event shall Valnet be liable for any form of compensation, termination pay and/or severance in situations of termination, even if the Service Provider completed twelve (12) consecutive months of continuous Service before their termination, as the Service Provider is not an employee or agent of Valnet as alleged in Section 3;

9.2.7. <u>Cessation/Death/Incapacity</u>. This Agreement shall terminate automatically upon the cessation of business of Service Provider or upon the death or incapacity of Service Provider;

9.2.8. <u>Breach</u>. This Agreement may be terminated by either Party upon a breach of a material term or condition of this Agreement which breach is not cured within five (5) days from written notice from the non-breaching Party;

9.2.9. <u>Obligations upon Termination</u>. Upon termination of this Agreement (i) neither Service Provider nor Valnet shall have any further obligations under this Agreement, except for the obligation to pay Service Provider for any unpaid Services rendered and any approved and unpaid expenses incurred prior to the termination, as well as any obligations under Sections 5 through 10 of this Agreement; (ii) Service Provider shall return all Valnet equipment, Work Product and Confidential Information within five (5) days at Valnet's expense;

## 10. MISCELLANEOUS

10.1.    <u>Independent Contractor</u>. It is expressly agreed by the Service Provider and Valnet that the Service Provider shall have the status of an independent contractor and that the Service Provider shall not be considered an employee of Valnet for any reason or purpose whatsoever. Under no circumstances shall Service Provider consider Valnet as its/his employer, partner, commercial agent, associate or principal. The Service Provider shall not acquire, benefit from or enjoy any of the rights, privileges, powers, or advantages of the employees of Valnet including, without limitation, worker's compensation benefits, disability insurance, vacation, or sick pay, or any other benefits available to Valnet's employees.

10.2.    The Service Provider acknowledges that it is not authorized to act on behalf of or otherwise bind Valnet to negotiate or execute contracts on behalf of Valnet, or to represent to any Person that Service Provider has the power to create any obligation on behalf of Valnet. Furthermore, the Service Provider acknowledges that it cannot contract any expenditure on behalf of Valnet without the prior consent of Valnet.

10.3.    <u>Fees and Expenses</u>. Each Party shall pay its own legal and other expenses incurred in connection with the negotiation, preparation, entering into and performance of this Agreement and/or any SOW and the transactions it contemplates.

10.4.    <u>Further Assurances</u>. A Party shall promptly do, sign, deliver or cause to be done, signed and delivered all further acts, documents and things that the other Party may

reasonably require for the purposes of giving effect to this Agreement.

10.5.    <u>Notices</u>. Any notice, consent or other communication under this Agreement shall be given in writing and delivered by hand, by registered mail, by bailiff or sent by fax or by email (with confirmation of transmission), and addressed as follows:

if to Valnet:
Valnet Inc.

Attention: Yury Smagorinsky
Email: legal@valnetinc.com

if to Service Provider:
Nicholas James Hazleton

Attention:Nicholas James Hazleton
Email:hazletonenterprises@gmail.com

Such notice, consent or other communication will be deemed to have been given and received on the day it is actually delivered or sent (or if that day is not a Business Day, on the following Business Day), unless it is delivered or sent after 4:30 p.m., in which case it will be deemed to have been given and received on the next Business Day.
A Party may, from time to time, designate another address in accordance with this Section.

10.6.    <u>Severability</u>. Each provision of this Agreement and/or SOW is separate and distinct and, if a provision of this Agreement and/or SOW is determined to be invalid, illegal, or unenforceable, all other provisions will remain in full force and effect.

10.7.    If applicable, all Canadian companies, individuals, etc. shall duly notify Valnet if GST, QST or HST (as applicable by law) is to be included in compensation and shall duly include all said sales taxes in an invoice. Said invoice shall clearly indicate all sales tax numbers for which the writer is duly registered.

10.8.    <u>Guild and Unions.</u> This Agreement and/or SOW shall not be governed by the terms of the Writers' Guild of Canada or the United States and/or any collective agreement thereof, nor any other guild agreement.

10.9.    <u>Waivers.</u> A failure to act or delay in acting by a Party with respect to a non-performance, or the non-exercise of a right, under this Agreement and/or SOW will not operate as a waiver of that performance or of that right. The waiver of a right under this Agreement and/or SOW by a Party will not be effective unless it is given in a signed writing, in which case it will be effective in the specific instance and for the specific purpose given.

10.10.    <u>Default.</u> The debtor of an obligation under this Agreement and/or SOW will be in default of that obligation by the mere lapse of time for performing it.

10.11.    <u>Successors and Assigns</u>. This Agreement and/or SOW will bind and be for the benefit of a Party's successor or permitted assign.

10.12.    <u>Assignment</u>. The Service Provider may not assign or delegate any right or obligation under this Agreement and/or SOW without the prior written consent of Valnet. Valnet may

assign all its rights and obligations under this Agreement and/or SOW without the prior written consent of the Service Provider.

10.13.    <u>Amendment</u>. This Agreement and/or SOW may only be amended in a writing signed by each Party.

10.14.    <u>Conflict</u>. In the event of any inconsistency, the following documents shall have the following order of precedence: (i) this Agreement; (ii) a SOW.

10.15.    <u>Governing Laws and Jurisdiction</u>. This Agreement is governed by the laws of the province of Québec and the laws of Canada applicable therein. The Parties irrevocably submit all disputes arising out of this Agreement to Québec courts, judicial district of Montréal. Pending final resolution of a dispute hereunder, the Service Provider will proceed diligently with the performance of its obligations under this Agreement.

10.16.    <u>Language.</u> The parties have expressly required that this Agreement, any SOWs and notices relating thereto be drafted in the English language. *Les parties ont expressément exigé que la présente entente et les mandats spécifiques en découlant et tous les avis y afférant soient rédigés dans la langue anglaise.*

10.17.    <u>Record Documents.</u> Upon completion of a SOW, the Service Provider shall compile and deliver to Valnet a reproducible set of record documents (in electronic native or physical form(s), as required by Valnet) based upon the work completed, including any marked-up record drawings, addenda, deliverables or other work data.

10.18.    <u>Counterparts</u>. This Agreement and/or SOW may be signed in any number of counterparts, each of which is deemed to be an original and all of which taken together is deemed to constitute one and the same instrument. Each counterpart may be delivered by fax or email and a faxed or emailed copy is as effective as an original.

[*Signatures to follow*]

IN WITNESS WHEREOF, by their signatures below, the Parties hereto acknowledge that they have reviewed carefully what has been expressed in this Agreement, which they understand is a legally binding document, and that the understandings and agreements expressed in this document are binding upon them as of the Effective Date.

| | |
|---|---|
| *Alessandro Romano* | *Nicholas Hazleton* |
| Signed: 1/10/2023 | Signed: 12/12/2022 |
| Name: | Name:    Nicholas James Hazleton |
| Title: | Title:    Senior News Editor |
| Date: | Date:    12/12/2022 |

**Statement of Work**
**("SOW")**

This SOW is entered into based on the Master Services Agreement signed between Valnet Inc.,

("**Valnet**"), with its principal place of business at 7405 TransCanada Highway, Suite 100, Montreal, Quebec, H4T 1Z2 Canada, and Nicholas James Hazleton ("**Service Provider**"), whose address is3779 San Ramon Drive Apt. 255 Oceanside, CA 92057.

| Master Service Agreement | Effective and executed onDecember 8 2022 |
|---|---|
| Statement of Work Effective Date | December 16 2022 |
| Scope: | Service Provider shall perform the following services which shall be on an as-needed basis at the sole discretion of Valnet.<br>At a minimum, the services to be provided will include:<br><br>• edit and publish content as per daily/monthly quota requirements set forth by Valnet management<br>• encouraged to write if daily quota is not met (included in the yearly pay)<br>• edit and publish content as per HotCars' brand guidelines set forth by Valnet management<br>• writer development and management<br>•  help onboard and train writers<br>• use analytics for overall content creation direction (performance reports, etc)<br>• Implement strong on-page optimizations as per HotCars' brand guidelines<br>• assist with developing/implementing editorial strategies (for news) under the managing editor's guidance. |
| Additional Specifications | Please add additional specifications that are relevant or specify if something in the SOW defers from the MSA |
| Term: | 36 Months<br><br>Under no circumstance shall the Service Provider be entitled to any compensation, termination pay, or severance pay upon termination of the Master Service Agreement or SOW. |
| Price (please check and specify) or other as detailed: | ■Fixed Price<br>Yearly: $40,000 USD / year + Biyearly bonus eligibility<br><br>☐Amount determined by the Parties through written correspondence |
| Invoices: | Each invoice shall include Service Provider's name and address, Valnet's company name and address, date of services rendered, PayPal email address, a description of services.<br><br>In addition to the foregoing, Valnet shall reimburse Service Provider for Service Provider's reasonable expenses actually incurred in performing the Services so long as such expenses were pre-approved in writing by Valnet. Expenses (with respect to those necessary to carrying out the services listed in the Agreement or SOW and pre-approved by Valnet) shall be reimbursed during the regular payment period. If applicable, it shall be the responsibility of Service Provider to add any expenses to the invoice as well as |

| | provide relevant receipts upon submission. |
|---|---|
| | Payments will be made on the 1st and the 16th of each month via PayPal or other means as discussed. Service Provider will only be paid out once eligible, as detailed in the Master Service Agreement. |
| | Service Provider shall incur all transaction fees associated with their third party payment method, such as but not limited to Payoneer, Paypal, bank wire transfer etc. |
| **Valnet Representative:** | Alessandro Romano |
| **Service Provider Representative:** | Nicholas James Hazleton |

[*Signatures to follow*]

## Record of Signing

| | |
|---|---|
| For | Valnet Inc. |
| Name | Alessandro Romano |
| Title | Lead Recruiter, HC /TPS |

*Alessandro Romano*

**Signed on 2023-01-10 18:16:11 GMT**

Secured by Concord™
DocumentID: ZDgyNTg0OTEtZD
SigningID: MGM0M2FiODMtND
Signing date: 1/10/2023
IP Address: 68.67.52.186
Email: alessandro.r@valnetinc.com

| | |
|---|---|
| For | hazletonenterprises@gmail.com |
| Name | Nicholas Hazleton |
| Title | |

*Nicholas Hazleton*

**Signed on 2022-12-12 16:05:16 GMT**

Secured by Concord™
DocumentID: ZDgyNTg0OTEtZD
SigningID: NDdkNDQ5NDUtYj
Signing date: 12/12/2022
IP Address: 72.199.72.70
Email: hazletonenterprises@gmail.com

